We'll hear argument next in number 20-1055, In Re Sabin, Mr. Vidalpia. Thank you. In his opening briefs, in his opening reply briefs before the board appellants, Robert Sabin presented two arguments. The first is that the the board failed to properly construe the claims to include certain limitations in the preamble and body which distinguish both the primary 103 reference Sabin 082 and the secondary reference to Frey. The second argument is that appellant indeed overcomes the presumption of obviousness under the holding of Peterson as the board ignored the evidence that Frey's range is so broad that it does not invite routine optimization. If you recall that broad was 7 by 10 to the minus 4 grams to 7 grams per day for a 70 kilogram person. Appellant first argued that the board failed to properly construe claim 6 to include the limitations in the preamble and body and those those limitations the missing limitation in the preamble and in the body is to effectively treat Alzheimer's disease and related amyloid plaque development and reduction of amyloid plaque protein abrogation and amyloidosis and had the board considered and construed the claims properly this these these two limitations would have in the preamble and in the body would have distinguished Sabin 082 and Frey separately and in combination. And so the examiner first and then the board they have to fail to consider the missing limitations when it gets through the claims and this is fatal error because all the words in the claims are important as suggested by Amgen versus Cox, Mary and Bozell. This is Judge Taranto, why isn't there a very large forfeiture problem I mean when you say the examiner and then the board failed to do something it's a little awkward to say they failed to do and am I remembering right that you did not in a sense judge to a claim construction position that said the various words after the and after Alzheimer's disease required something more? Well in in appellants brief before the board the appellant presented all of the claims including those limitations the first office action issued and the examiner proposed a prima facie case of obviousness where he presented those claims and didn't argue the limitations and I think it started from there what what occurred though is that in the reply brief before the board appellant did raise the issue the board's September 12, 2019 decision did not address the fact that appellant in in his replied brief raised the issue where 44.4 37 CFR 44.41 B2 sets out that a new argument can be replaced can be raised in a reply brief for good cause and a proper construction of these claims we believe it's good cause the the board should have remanded the case back down to the examiner these limitations were significant they're the heart of the case they come from the Oregon studies the Oregon studies verified that this treatment in the claimed range is efficacious. Counsel if this is Judge Moore if I understand your argument it was you can always raise a new argument in your reply brief for the first time for good cause and your only explanation of why this is good cause it's claim construction is always good cause because it's important to construe the claims properly if I'm understanding that argument you're saying as a matter of law across the board claim construction can always be erased for the first time in reply brief and the board is forced to address it. No your presumption what what occurred is that in the exam sorry exactly yes in the examiner's reply brief the issue the issue was raised I believe it was page 24 of the examiner's brief at ATPX 11 the board stated sorry the examiner stated that at most appellate evidence elucidates the mechanisms by which phytic acid may be effective in alleviating symptoms of Alzheimer's disease by providing detection against app c99 medic mediated toxicity enhancing cytochrome oxidase which is mitochondrial function goes to mitochondrial function or suppressant suppressing malady aldehyde or lipid peroxidation these these the results of this of the treatment of the claim treatment realizes these effects and they would again brought up by the examiner in his response to the the appellate's opening brief before the board and I believe it may bear what it suggests that these that that this is an appellant raised the issue directly I'm not suggesting that one can avoid raising an argument in their brief and then raise it in the reply brief without the course but what I'm suggesting is that this is indeed a good cause because the these these limitations come from the studies and there's just no way that these claims can be properly construed and then an obviousness analysis conducted unless they include these limitations counsel time is short and and why don't we why don't we just suppose we accept your argument that these are not waived why don't you tell us why you think these preamble terms are limiting you reference in Ray fought which I remember and in that case there was actually antecedent basis in the claim body for the limitation the preamble I mean antecedent basis it referred back to the preamble for antecedent basis and and so that is a significant difference I think between that set of facts and this set of facts so what what is your best argument for why we ought to interpret this preamble language as not a statement of intended use but rather an actual structural limitation because the body of the claim refers back to it the body of the end of claim six it says big administrated an amount of point of 0.5 grams to about 18.75 grams per day to effectively treat Alzheimer's disease and related amyloid plaque development and reduction of amyloid plaque protein aggregation of amyloidosis so that the fraud the clause is repeated in the body of the claim proceeding preceded by the phrase to effectively treat and it's and it's articulated in the preamble before the consisting essentially up so I believe it is tied to the preamble look the body of claims try to the preamble so I think that if you think that if you think the limitation is repeated in that portion of the body of the claim about effectively treat Alzheimer's disease why do you need the preamble well you know it's not quite repeat I mean it isn't quite repeated and it doesn't actually use antecedent basis antecedent basis is a very specific patent prosecution concept where you refer back by saying the as opposed to an you know it's it's very precise in patent jargon and this isn't antecedent basis it if anything it's restating it in a slightly different way which would therefore imply the preamble is not in fact a limitation I don't I see that it's tied back I mean it says 0.5 grams to about 1875 grams per day to effectively treat Alzheimer's disease dot dot dot no it doesn't have a dot dot dot but okay go ahead sorry to effectively treat Alzheimer's disease and related amyloid plaque development and reduction of amyloid plaque protein aggregation and amyloid so why isn't that by itself the full portion of the structure of the claim why what about that makes you think it is referring back for antecedent basis which is a technically precise concept to the preamble because it's introduced in the preamble then it's tied together with the to effectively treat but why isn't the to effectively complete to treat complete in its own structure why do you have to look back it may be judge I was responding to the solicitors position I believe that the claim clearly requires construction to include the expression to effectively treat Alzheimer's disease and related amyloid plaque development in reduction of amyloid plaque protein aggregation and amyloidosis I mean that was our point judge I'm not sure if I'm being clear here okay anything further mr. Rodopia anything further yes the second second argument you're into your rebuttal time oh I wonder can I have some of that time back you can have you can use it all now if you wish no the time in the first 10 minutes I am we got sort of sidetracked with that that limitation and I was hoping to present the second argument okay let me get into it a prompt brief essentially in our understanding there's no reason that the skilled artisan would have looked to fray to modify what's taught by Sabin 08 to the primary reference we don't see that phrase treated invented it a method of treating Alzheimer's disease looking at phrase paragraph 5 which is the appendix page 10 80 80 84 phrases that the invention sorry four and five the invention provides message for enhancing failure function protection of tissue components where five says the invention provides a method protecting muscarinic acetylcholine receptors and increasing the efficacy of an agent that directly or indirectly affects the an MACH are essentially he mentioned in several of the paragraphs Alzheimer's disease as an afterthought I mean he articulates in paragraph 12 first he that the method of again of treating muscarinic acetylcholine receptors can treat or prevent us in in claim in paragraph 12 that it can treat or prevent a CNS disorder but it goes into all these diseases that are just just about 90% of all the diseases known to man Alzheimer's disease Parkinson's disease Lewy body dementia multiple sclerosis tumors in the brain spinal cord prion diseases spinal cord injuries I mean and then paragraph 13 goes into blood diseases neuropathies he just goes on and on and the and so we don't believe that he really that there's any really written description support for treating Alzheimer's disease even though appellants initial and reply brief articulated it in terms of enablement under 112 a that doesn't appear to be any support at all for treating Alzheimer's disease he goes through four examples to show it doesn't for examples beginning on page 80 px 1062 and all of them are just hypothetical the examples talk about about the ability in the art to verify the machr but his example show no results they cannot eat they do not even verify the treatment of machr let alone provide any kind of data to try to tie successful treatment of machr to any kind of CNS disorder let alone Alzheimer's disease this there's nothing in in pray to indicate that machr somehow affect Alzheimer's disease the best he had was example one which is paragraph 109 again of 80 px 1094 and what that articulates is that pyrophosphate protects the machr pyrophosphate not not the inventive inositol hexaphosphate which has got six phosphates pyrophosphate protects the machr for inactivation of the LMW inhibitor or by the combination of hemi and peroxide and that's in figures one you know it's just nothing to tie for example the results shown in figure 1 pyrophosphate to inositol hexaphosphate affecting Alzheimer's disease or amyloid precursor protein etc and that's pretty much our argument we don't see that fray truly invented it and so I just want to end with the fact that fray this this was a pending application fray and fray excuse everybody we're out of time here we'll give you we'll restore one minute of your rebuttal okay and I will save it till then thank you thank you we'll hear from this color thank you your honors and may it please the court substantial evidence supports the obviousness of the claimed method over the prior art of Sabin and fray appellant was already granted a patent the Sabin patent and almost an identical method step which was the oral administration of phytic acid to Alzheimer's disease patients so the board correctly found that any difference in dose between what was disclosed in Sabin and the claims that issue here was rendered obvious by phrase disclosure of doses that overlapped the claimed range for phytic acid and the treatment of Alzheimer's disease and appellant failed to overcome the presumption of obvious created by this overlap by a showing of either teaching away or unexpected results I'll briefly address the discussion this morning regarding the amyloid plaque limitation as judge Toronto pointed out there is a significant torporature issue here as appellant admitted they raised this for the first time in their reply brief to the board which under 37 CFR 41.41 is just simply too late council this is more can I ask a question as point of clarification am I right in remembering that they never raised the amyloid plaque issue in the body of the claim that the only thing they did in the reply brief would point to the preamble look exactly they say the answer does not require it does not account for each required claim limitation and then they just quote that to effectively treat so that is the body of the claim limitation I believe not the preamble so they just in their reply brief referred to the body of the claim not the preamble and that's a appendix 826 moving over to 827 it spans those two pages so they did refer to the body of the claim but that was the very first time that they mentioned this claim limitation in this one kind of sentence spanning two pages of the reply brief there was nothing in the examiner's answer that was new it was examiner's answer is almost completely identical to the final rejection at this in this case so there was nothing in the examiner's answer that provided good cause under 41.41 to allow them to raise this issue at this point so the board properly did not consider it and at that point it is waived and they never filed a request for a hearing saying the board misapprehended or overlooked anything and and I disagree with one of the statements by appellants counsel that this is the heart of the case you would think if it was the heart of the case their appeal brief would have mentioned it instead as we pointed out in the directors brief at page 28 we took out a number of statements from their appeal brief which only focused on treating Alzheimer's disease no mention of these amyloid plaque limitations and even if you go back in prosecution for example I think a good example to look at is appendix 614 to 617 this is the response essentially right before the final rejection and just over and over and over again throughout this they only talk about Alzheimer's disease for example if you look at page 615 appendix 615 they talk about applicants invention is a standalone monotherapy for Alzheimer's disease no mention of amyloid plaque so I disagree with appellants characterization of this amyloid plaque limitation as the heart of the case this is just Toronto can I ask a question that that relates to your kind of second and third arguments about this plaque limitation so put aside for the moment the question of forfeiture you say that the body language to effectively treat Alzheimer's and do these other things is a statement of intended use have have we really said that a limitation in a claim that uses the language to effectively treat something and I guess it would also follow on and to effectively yet to effectively treat the disease and the related plaque development that that is a non-limiting statement of intended use because of the word to believe the closest cases would be the Bristol-Myers case and the Capaxone case I think I'll start with the Capaxone case in that case the body of the limitation said so thereby treat the human patient and then it continued on with a dose that they were going to give and this court found that that claim language did not have any bearing on the method being practiced it did not change the steps and the inmate Capaxone followed the Bristol-Myers case which came to a similar conclusion again with so that I'm sorry so that I don't I'm not remembering Capaxone or Bristol-Myers for that matter so that we ruled there that it was actually immaterial to if it were infringement or to prior art whether there was actually an effective treating going on that understanding of those cases yes and I think the reason being is that there was no change in the dosing based on that limitation so the claim itself had a dose as this claim does had a dose already the what you were going to effectively treat did not change those thing recited by the claim and so it really was just an extra statement of intended use or intended results for the claim that did not change any of the manipulative steps and did not really make a difference in any of the method steps of the claim in both those cases as similar to this case and so I think those are the two that are our closest here and and as your honor there's more pointed out in my thought we've distinguished that in our brief in addition to the antecedent basis issue the travel trailer language in that case was also deemed limiting because it added structural requirements that adding a living living area requirement and a toe ability requirement that was a structural difference not just a statement of intended results here the amyloid plaque limitations are just statements of what they hope to achieve or what they'd like to achieve with the administration not changing any of the this is just more following up on this line of questioning why isn't the to effectively treat Alzheimer's disease or to effectively treat amyloid plaque development relevant to the amount that you would actually administer this is a large range 0.5 to 18.75 grams so why isn't that subsequent limitation effective as to the amount within that range that you would need to use for any patient I think that's an excellent question your honor we presented in our brief that we did believe this was a statement of intended results however this may be one reason why if the court does not find this issue ways if there are some factual questions that should be addressed and therefore it would be most prudent to remand to the board we put it these this briefing in our brief just for completeness sake but because it was waived and the board never addressed and the examiner never addressed it we do believe it is most prudent if this court does not believe it was waived to remand it for this sort of factual considerations and arguments to be raised and addressed by either the examiner or the board what one problem that I have with the waiver argument is the board didn't find it waived it just failed to address it well your honor I believe the board's rules provide that they do not have to consider an argument that was not raised so 4141 does provide the board you know guidance on that which appellant should have been aware of and furthermore I think also the fact that it was just one sentence spanning two pages at the very bottom stuck in after years of prosecution where there was never raised I also would say that that was not sufficient really to put the board on notice that this was an issue that they were supposed to address it you know this skeletal one-sentence argument really did not adequately put the board on notice of this argument that they were supposed to address so it's understandable that the board responded to all the other arguments that they made in their appeal briefing and through the course of prosecution and with and with respect to the fact I believe if Helen when you when you say this this one sentence wasn't sufficient to put them on notice they actually added emphasis on page 827 and they said the examiner's answer failed to identify either we're saving or afraid teach and then they have the limitation and they added emphasis to the end which I think is a pretty clear signal that this is not just about Alzheimer's that it avoids amyloid plaque reduction as well I don't how much how much more do you think they would have had to say for that not to you say it's skeletally raised so how much more would they have had to say I think one of the things I should have done is raise it in their appeal brief so I think that is our main argument is that their appeal brief over and over and over again and is it correct that the board could find something not raised in the initial appeal brief waived and therefore not address it if it's only raised in reply for the first time that's correct but they did that my problem is now I'm kind of circling back to what my problem was the board didn't do that so my problem is the board didn't conclude that it was waived you're absolutely right that the board had the authority to conclude it was waived and may have done so and maybe we would have reviewed that finding but the board didn't get waived they just didn't address it and under the APA doesn't the board have an obligation to address all of the arguments that are raised stepping back to your first point I don't believe a party's waiver to this court depends on whether the board finds something waived in the reply brief I don't know of any cases that have found that to be the case the board do you know of any cases that have where we have found an argument was waived because it was only raised in the reply brief even though the board failed to address it at all and no I am not aware of one I was not able to find one there there are plenty of cases that affirmed the board's finding of waiver right no absolutely absolutely and the APA requires the board to address every argument that's made and so here we have an argument made about a claim limitation just drop the whole preamble thing because that to me was just noise but we have a an argument made about a particular claim limitation not being disclosed by the references and we have the failure of the board to address it at all not not only did they not address it on the merits they didn't conclude it was waived I don't know how that satisfies the APA which requires the well I believe underlying the APA is that it's required to raise all the arguments properly raised and I would argue that under 37 CFR 4141 and 37 CFR 4137 which also talks about the fact that arguments not included in the appeal brief will be refused consideration by the board both those two provide that this argument was not properly raised and the board with respect to a different issue regarding what claim was representative but they did talk and cite 4137 does does the board have for does the board have the discretion I mean we certainly have the discretion right that our court has the discretion to address an issue raised in a reply brief for a first time we usually don't do so but we have the discretion to do so does the board similarly have discretion to consider arguments raised for the first time in the reply brief or is the rule absolute that they do not have the discretion so under the rule appellants can come forward with good cause and that the board can look at that and decide whether or not there is good cause and use its discretion to look at the argument appellants did not do so here the first time that they mentioned good cause is in the reply brief to this court which is just simply too late so yes the board does have discretion but it's at appellants urging that there is good cause and no such position was stated here I'd like to just with my last 40 seconds just address the fact appellants argument about the brain spot not being too broad again appellant as with all this briefing to the board and to this court is really isolating Lee talking about fray alone and failing to consider the entire teachings of Sabin which already tells you the dose the type of administration and the patient to give it to pray was directed to Alzheimer's disease there was a discussion about fray never talking about Alzheimer's disease I just like to point the court to appendix 1088 paragraph 56 where Alzheimer's disease is identified as the preferred treatment for this fray fray publication so there's no more questions I'd ask the court to affirm the board thank you okay mr. Vidal Pia you have a minute yes you know I just want to point out that spray issues great the fray reference issued as a patent with two claims the first is a method of treating muscarinic receptors in a subject having a CS CNS infection comprising meningitis with a by delivering an effective amount of Pam Pam and Ronnie which is a calcium uptake drug for use in cancer patients by bypassing the blood-brain barrier by intranasally administering the upper one-third of the subject's nasal cavity the effective amount of cam and Ronnie or pharmaceutically acceptable salt thereof so treating the subjects muscarinic receptors that that are affected there there is what what I did was it mr. prey rethought his initial disclosure during the prosecution of modified the claims and and make clear that that systemic administration of the entire range of fray that is a seven milligrams to seven grams it's problematic and so we said lower that dose and put it through the nose and my opposition is is that looking from Sabin 08 to the skilled person would not have looked from so but Sabin 08 to to fray because fray has pretty much articulated that nasal administration is the way to go the systemic administration all administration is problematic and there's no way that Sabin which which Sabin 08 to which recommends 35 grams per day to 210 grams per day would have looked to fray to nasally administer a composition how could you do it mr. yeah I think we're well over your time thank you very much my colleagues have further questions thank you well and the case is submitted thank you all the honorable court is adjourned until tomorrow morning at 10 a.m.